## Case No. 1,454.

### The B. J. WILLARD.

### [8 Wkly. Notes Cas. 47.]

District Court, D. Pennsylvania. May 7, 1879.

SHIPPING—CHARTER PARTY—CONSTRUCTION—FAILURE TO PROVIDE MEANS TO LOAD—INCOMPLETE CARGO—LIABILITY OF CHARTERER FOR FREIGHT.

[A charterer agreed to furnish a vessel named "a full and complete cargo of guano in bulk, * * * vessel to be loaded at Serrano Key by its crew, with the assistance of the men on the island." There were no means at the island to transport the guano, and the master of the vessel used the ship's boat until there was danger of rendering it unsafe for the homeward voyage, when, having procured but two-thirds of a cargo, he returned. Held, that the charterer's failure to provide means of transportation justified the master, he having no other means at his command, in returning with an incomplete cargo, and rendered the charterer liable for freight on a full cargo.]

[In admiralty. Libel for freight by B. F. Woodbury, master and agent of the schooner B. J. Willard, against Moro Phillips, charterer of the schooner. Decree for libelant.]

The schooner was chartered at the port of Philadelphia, to proceed to Serrano Key, one of the guano islands of the West Indies, there to be loaded with a full cargo of guano, of which respondent was owner, freight payable on right delivery of cargo, etc. The vessel took on board a cargo of only 306 tons, a full cargo being 525 tons, and claimed freight on the difference. The charter-party contained, inter alia, the following clause: "The party of the second part doth engage to furnish and provide to the said vessel a full and complete cargo of guano in bulk. * * * It is agreed that the vessel is to be loaded at Serrano Key by the vessel's crew, with the assistance of the men on the island. * * * The cargo or cargoes to be received and delivered according to the customs and usages of the ports of loading and discharging—say within reach of the vessel's tackle. * * * Vessel to take on board two small lighters, etc., to be discharged at Serrano Key free of freight." The libellant contended that it was impossible to load a full cargo, because the guano was not ready mined; that it was the duty of respondent to have the required amount of guano ready mined, and it was shown that the lighters referred to in the charter-party had not been furnished. Additional facts are discussed in the opinion of the court.

Henry Flanders, for libellant.

The agreement was to load a full cargo, and the respondent is responsible for all contingencies that prevented this. Kirk v. Gibbs, 1 Hurl. & N. 810; Clark v. Crabtree [Case No. 2847]; Carr v. Petroleum Co., L. R. 1 C. P. 636; Barker v. Hodgson, 3 Maule & S. 267.

John G. Johnson, contra.

By the charter-party the vessel's crew were to mine and load the cargo, and the master acquiesced in this. Moreover, he was himself to furnish the lighters, but sailed away without them.

THE COURT (BUTLER, District Judge). By charter-party, dated August 25, 1875, between B. F. Woodbury, master and agent of the schooner B. J. Willard, and Moro Phillips of Philadelphia, the latter agreed to furnish the vessel named a "full and complete cargo of guano in bulk," and pay $4.75 per ton of 2240 pounds, on delivery in Philadelphia—the vessel to be loaded at Serrano Key (a guano island) by its crew, with the assistance of the men on the island. A printed form in blank was used in preparing the contract; and the agreement, taken literally, would seem to require that the cargo was to be received "within reach of the vessel's tackle." This, however, is probably the result of negligence in filling the blanks, and failing to observe what was printed, rather than of design. The understanding of the parties, as is shown by their subsequent conduct, was different; and the contract may be read, therefore, as if this provision were omitted.

The vessel proceeded to the island and, loading 306 tons of guano, brought it to the port of delivery. A "full cargo" would have been 525 tons; and freight on this quantity is charged, on the allegation that a full cargo could not be obtained by reason of fault in the respondent: First, in failing to have the proper quantity "mined;" and, second, in failing to furnish lighters to convey it to the vessel. The island is covered with guano. No "mining," in the ordinary sense of the term, is necessary. On scraping away a covering of rubbish, the guano is ready for shovelling into carts, or other means of conveyance. A part of 306 tons brought away was so uncovered when the vessel arrived at the island, and the balance was uncovered by the master and crew. Whether it was the duty of the respondent to have the required amount ready for loading is, in our judgment, unimportant. We do not think his failure in this, if such was his duty, would justify the libellant in coming away without a cargo. This obstacle could readily have been surmounted, and if it was the only one, should have been, and the respondent looked to for compensation. Such, doubtless, was the master's view of his duty, for his testimony shows, as we have seen, that

he proceeded to uncover the guano, and would have loaded a full cargo, as he says, if the means of conveying it from the shore to his vessel had been sufficient for the purpose. He declares, distinctly and emphatically, that the reason he came away without a full cargo was, that the boat belonging to his vessel (without which it would have been unsafe to go to sea) was so injured that he could use it no longer for loading, without danger of its complete destruction, and that there was no other on the island; and thus we are brought to the question presented by the libellant's second position, to wit, that the respondent failed to furnish the necessary lighters. Was it the respondent's duty to do this? An examination of the testimony satisfies us that it was. It is not expressed in the written contract, nor is it, as we have seen, that the libellant was to transport the guano from the shore to the ship. But it was fully understood by the parties; and the written contract must be read with the reference to, and in connection with it. That he did not furnish them is undisputed. The single boat which he sent out proved to be wholly worthless. The master testifies that he condemned it before starting for home, but says he hoped to make it serviceable by repairs at the island. The respondent's counsel has suggested, with some force, that if the respondent was to furnish lighters, it is singular the vessel sailed without them. But, on the other hand, if the libellant was to provide them, it is just as singular that he sailed without doing so. The evidence shows that he applied to the respondent for them, and after failure to obtain any other than the worthless boat referred to, he sailed, depending, as it would appear, on the use of his own boat, and the hope of being able to render the other serviceable by repairs. Notwithstanding this failure of duty on the part of the respondent, however, the libellant was not justified in coming away from the island without a full cargo, unless it was virtually impossible to obtain it with the means at his command. If, by prolonging his stay for a few days, the required amount could have been loaded, it was his duty to remain, and look to compensation for the delay, and consequent loss thus sustained. Under such circumstances he could not come away empty, and subject the respondent to the much heavier loss consequent upon paying freight on a cargo not carried. Could he have obtained a full cargo? A careful examination of the testimony has satisfied us that he could not, without serious danger of rendering his own boat unfit for use on the passage home. And this risk he was not required to run. Indeed, his duty to himself and the crew forbade it.

The libellant being free from fault, as is thus seen, he is entitled to the freight which the respondent contracted to pay. The respondent's failure to receive "a full cargo" results entirely from his failure to observe his contract; and he cannot, therefore, justly complain.

A decree will be prepared against the respondent for $879.50, the difference between the freight on a full cargo and the amount on what was carried, with interest from date when the same should have been paid.